IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

-oOo-

CHARLES ERDMANN, )
)
Plaintiff, )
)
vs. )
) Case No: 19-CV-457 WMC
LOUIS WILLIAMS,II, Warden, )
ROBERT KING, MD; MELISSA LAU- ) CIVIL RIGHTS COMPLAINT
FENBERG, RN; JASON STONE, NP; ) (BIVINS ACTION)
KWAME GYASI, MD/CD; JAN COLE, ) PURSUANT TO 28 U.S.C. § 1331
RN; STACY RANQUETTE, PA/C; )
PENNY PERRY, RN; sued in their) JURY TRIAL DEMANDED
individual capacities, )
)
Defendants. )
)
)

## INTRODUCTION

This is a Bivens Action filed by Charles Erdmann, a federal prisoner, for damages under 28 U.S.C. § 1331(a) alleging a denial of medical care in violation of the Eight Amendment to the United States Constitution.

## JURISDICTION

1. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. § 1331(a).

## VENUE

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. The plaintiff, Charles Erdmann, was incerated at Oxford-FCI

-1-

during the events described in this complaint.

4.   Defendant WILLIAMS II, is the Warden of Oxford-FCI.  He is sued in his individual capacity.

5.   Defendant Robert King, is a DO/NCR at Oxford-FCI.  He is sued in his individual capacity.

6.   Defendant Melissa Laufenberg, RN is the Health Services Administrator at Oxford-FCI.  She is sued in her individual capacity.

7.   Defendant Jason Stone, NP is an employee in the Health Services Department at Oxford-FCI.  He is sued in his individual capacity.

8.   Defendant Kwame Gyasi, MD/CD is an employee in the Health Services Department at Oxford-FCI.  He is sued in his individual capacity.

9.   Defendant Jan Cole, RN is an employee in the Health Services Department at Oxford-FCI.  She is sued in her individual capacity.

10.  Defendant Stacy Ranquette, PA/C is an employee in the Health Services Department at Oxford-FCI.  She is sued in her individual capacity.

11.  Defendant Penny Perry, RN is an employee in the Health Services Department at Oxford-FCI.  She is sued in her individual capacity.

12.  All the defendant have acted under color of federal law at the times relevant to this complaint.

## FACTS

13.  On May 27, 2017, the plaintiff injured his right shoulder

-2-

while engaging in a softball game at Oxford-FCI.

14. Plaintiff was taken to the hospital in Portage, Wisconsin and was examined by the emergency room physician. The physician diagnosed a probable rotator cuff injury and advised that the plaintiff should be immediately scheduled for an MRI. Additionally, the physician cautioned that a lack of treatment would result in permanent and irreversible damage.

15. The plaintiff was returned that same day to Oxford-FCI. He was in severe pain. Also, plaintiff was experiencing a rapidly worsening of the range of motion in his right shoulder. Plaintiff complained to medical staff at Oxford-FCI's Health Services Department but was more-or-less ignored by medical staff. As the days passed, plaintiff made numerous documented efforts to seek an appointment with Dr. (Robert) King in order to have him examine his shoulder and make a medical determination as to what care/treatment was required based on plaintiff's injury.

16. Approximately six weeks after plaintiff injured his right shoulder on May 27, 2017, plaintiff was returned to Portage, Wisconsin where he had a scheduled appointment with an orthopedic surgeon. The orthopedic surgeon diagnosed, as had the emergency room physician on May 27, 2017, plaintiff's shoulder injury as a probable rotator cuff tear. Also, the orthopedic surgeon advised that the plaintiff needed urgent care (surgery) for the injury to avoid permanent and irreversible damage. The orthopedic surgeon's concern resulted in his scheduling the

plaintiff for an MRI with the order for same marked as "urgent."

17. One week later, the MRI was performed and, one week after that, plaintiff was scheduled to meet with Dr. King. However, that meeting never took place. Plaintiff was informed by a medical staff member that the scheduled meeting between plaintiff and Dr. King was canceled because the results of the MRI had not been received. The medical staff member added that the MRI results did arrive no more than ten (10) minutes after plaintiff had been sent back to his housing Unit on the day of the scheduled meeting.

18. The diagnostic impressions noted in the July 5, 2017 MRI were as follows:

(1) Nondisplaced fracture at the greater tuberosity.

(2) Moderate subcortical bone contusion involving the anterosuperior humeral head.

(3) Modest intrasubstance tendon without retraction.

(4) Severe hypetrophic arthropathy at the acromioclavicular joint with prominent distal infer clavicular spur.

19. Although Dr. King received the July 5, 2017 results of the MRI, Dr. King did not schedule another appointment with the plaintiff to perform his own examination of the plaintiff and/or discuss possible treatment for plaintiff's medical condition. Throughout this entire period, plaintiff suffered increasing pain and discomfort which he reported to medical staff daily; yet, not one member of the medical staff even attempted to provide some sort of medical assistance, not even some type of medication to relieve his pain.

-4-

20. Dr. King and the medical staff that worked with him in the Health Services Department at Oxford-FCI denied plaintiff required medical care for his serious medical needs and showed nothing but deliberate indifference to his medical complaints and serious medical condition. The deliberate indifference demonstrated by the defendants in this case despite the medical reports from the emergency room physician and the orthopedic surgeon, specialist, caused plaintiff to suffer severe pain and discomfort unnecessarily and, thereby, subjected him to the type of "cruel and unusual punishment" prohibited by the Eighth Amendment to the United States Constitution.

## DENIAL OF MEDICAL CARE

21. While the plaintiff was at the hospital in Portage, Wisconsin on May 27, 2017, the emergency room physician informed him that he had a probable rotator cuff tear and needed an MRI. The emergency room physician wrote an "order" setting out his diagnosis and medical impressions, and prescription for pain medication.

22. That same day, plaintiff was returned to Oxford-FCI and sent back to his housing Unit. The following day, and every day thereafter, plaintiff complained of his pain and discomfort to medical staff at the Health Services Department. His pain medication was soon discontinued with no explanation. His further complaints of pain and discomfort was predominately ignored, although occasionally he was advised to buy aspirin from the institution's commissary.

-5-

23. Approximately six (6) weeks after his May 27, 2017 injury, plaintiff was returned to Portage, Wisconsin for an appointment with an orthopedic surgeon who, following the examination, ordered an urgent and immediate MRI.

24. The Health Services Department at Oxford-FCI, and Dr. King, received the results of the MRI sometime in, or around, July, 2017. However, no staff member at Health Services called plaintiff in to examine him and/or to discuss treatment for his medical condition; neither Dr. King nor any of his subordinate medical staff.

25. In the meantime, plaintiff suffered incredible pain and discomfort, yet he was tacitly and directly denied any medical care, treatment, or medication to relieve his pain and discomfort.

26. Each of the defendants in this complaint had actual knowledge of an objectively cruel condition, i.e., plaintiff's serious medical needs, and did not respond resonably to the risk. These defendants even failed to carry out the medical orders of the emergency room physician and the orthopedic surgeon, although these orders were available for each defendant to see in plaintiff's medical records.

27. To this day, plaintiff is suffering severe pain and his right shoulder has developed a very limited range of motion that causes incredible pain with every motion.

28. Plaintiff is convinced, on information and belief, that the denial of medical treatment by the defendants has caused him to be permanently and irreversibly disabled with regard to

his right shoulder.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

29.   Plaintiff has exhausted his administrative remedies with respect to all claims herein and as to each defendant.

## CLAIMS FOR RELIEF

30.   The actions, or inactions, of each defendant in this complaint, namely: Williams II, Warden, Robert King, MD; Melissa Laufenberg, RN; Jason Stone, NP; Kwame Gyasi, MD/CD; Jan Cole, RN; Stacy Ranquette, PA/C; Penny Perry, RN; in failing to provide the required medical care/treatment for plaintiff's serious medical needs as diagnosed and prescribed by the emergency room physician and the orthopedic surgeon discussed herein constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.   Additionally, defendants's actions, or inactions, constitute the tort of negligence under the statutory and constitutional law of Wisconsin.

## RELIEF REQUESTED

WHEREFORE, plaintiff requests that the Court grant the following relief:

A.   Issue a declaratory judgment stating that:

1.   Each of the named defendants actions, or inactions, in failing to provide adequate medical care for the plaintiff violated, and continue to violate, the plaintiff's rights under the Eighth Amendment to the United States Constitution.

B.    Issue an injunction ordering the Director of the Bureau of Prisons who, ultimately, is the superintendent over the medical staff at Oxford-FCI, to:

1.    Immediately arrange for plaintiff to be examined by a qualified physician;

2.    Immediately arrange for the plaintiff's need for physical therapy or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration and function of broken or otherwise injured shoulders; and

3.    Carry out without delay the treatment directed by such medical practioner.

C.    Award compensatory damages in the following amounts:

1.    $ 100,000 jointly and severally against each of the defendants named in the complaint.

Date: _May 19_, 2019

Respectfully submitted,

/s/ _____

Charles Erdmann
Register No. 13945-059
FCI-Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

## DECLARATION OF CHARLES ERDMANN

I, Charles Erdmann, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the very best of my knowledge and belief.

Executed (signed) on, _____    -8-

_May 19_, 2019

/s/ _____

Charles Erdmann